**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOHANNY URENA,**

     **Plaintiff,**

**v.**                                    **Case No: 8:13-cv-911-T-35TGW**

**ALLSTATE PROPERTY & CASUALTY**
**INSURANCE COMPANY,**

     **Defendant.**

_____/

## <u>ORDER</u>

     **THIS CAUSE** comes before the Court for consideration of the Motion for Summary Judgment (Dkt. 65) filed by Defendant, Allstate Property & Casualty Insurance Company ("Allstate"), the Amended Response in opposition thereto (Dkt. 89) filed by Plaintiff, Johanny Urena ("Urena"), the Reply (Dkt. 100) filed by Allstate, and the Sur-Reply (Dkt. 105) filed by Urena; and the Motion for Partial Summary Judgment (Dkt. 64) filed by Urena, the Response in opposition thereto (Dkt. 82) filed by Allstate, and the Reply (Dkt. 95) filed by Urena.   The Court also considered the Notice of Supplemental Authority (Dkt. 110) filed by Allstate.   Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS in part** and **DENIES in part** Allstate's Motion for Summary Judgment (Dkt. 65) and **GRANTS in part** and **DENIES in part** Urena's Motion for Partial Summary Judgment.   (Dkt. 64)

## I.   BACKGROUND

### a.   Procedural History

Plaintiff Urena brought this action against Allstate seeking damages under the Florida Civil Remedy Statute, Fla. Stat. § 624.155.   (Dkt. 1)   Specifically, Urena claims that Allstate engaged in unfair claim settlement practices in the handling of her uninsured motorist ("UIM") claim.   Urena also alleges that Allstate's conduct is the result of its general business practice and she seeks punitive damages.   Allstate denies Urena's claims.   On June 6, 2013, Allstate filed its Motion to Dismiss Urena's Complaint for failure to state a cause of action upon which relief may be granted.   (Dkt. 6)   The Court denied Allstate's Motion to Dismiss on October 15, 2013.   (Dkt. 19)   Allstate now moves for an entry of summary judgment in its favor and Urena moves for partial summary judgment with respect to several of Allstate's affirmative defenses.   (Dkt. 65, 64)

### b.   Undisputed Facts

Allstate issued an automobile liability policy, number 961436011, to Pedro Urena and Plaintiff, Johanny Urena, for the policy period December 15, 2009 to June 15, 2010 (the "Policy").   (Dkt. 81 at P. 1)   The Policy provided UIM coverage with limits of $10,000 each person/$20,000 each accident and allowed for stacking of the UIM limits.   (Id.)

On January 10, 2010, Urena was involved in a motor vehicle accident with Roberto Sanchez (the "tortfeasor").   (Id.)   Under the terms of the Policy, up to $30,000 in UIM benefits was potentially available to cover the accident.   (Dkt. 65-11 at P. 11)   The tortfeasor had automobile bodily injury ("BI") coverage in the amount of $10,000, which was tendered to Urena.   (Dkt. 65-3 at P. 17)   Additionally, Urena had $10,000 in available personal injury protection ("PIP") benefits.   (Dkt. 65-7 at P. 2; Dkt. 65-24 at P. 2)

Allstate began investigating the accident on January 21, 2010.   (Dkt. 81 at P. 1)   In doing so, Allstate established auto assignments to determine the auto damages, spoke with Urena about the accident, ordered the police report, and obtained Urena's recorded statement.   (Id. at P. 2; Dkt. 65-1 at P. 7-9)

On July 19, 2010, Allstate received a demand from Urena for $30,000, the full UIM Policy limits.   (Dkt. 81 at P. 2)   The demand stated that Urena had outstanding current medical costs in the amount of $7,840.83.   (Dkt. 65-2 at P. 5)   This amount took into account payments already made by Urena's PIP carrier.   (Id.)   The demand also indicated that a medical bill from Dr. Fred Federigos, an orthopedic surgeon, was still pending.   (Id. at P. 3, 5)   Tracey Pilato ("Pilato"), an Allstate UIM adjuster, was assigned to the claim.   (Dkt. 81 at P. 2)   Pilato acknowledged receipt of the demand on July 21, 2010.   (Id.)

Pilato evaluated Urena's UIM claim on August 9, 2010.   (Id.)   Based on the information contained within Urena's initial demand, Pilato calculated that Urena had incurred $12,500 in reasonable and customary medical bills.   (Dkt. 65-7 at P. 1)   This amount was offset by the $10,000 available to Urena from her PIP benefits, resulting in out-of-pocket costs of $2,500.   (Id. at P. 2)   Pilato also accounted for $216 in lost wages. (Id.)   During her evaluation, Pilato used Colossus, a computer software program into which an adjuster can input information about a claim and obtain recommended values for general damages and a gross settlement negotiation range.   (Dkt. 81 at P. 2)   The Colossus assessment performed by Pilato on August 9, 2010 yielded a recommendation for general damages of between $5,040 and $6,300, with a gross settlement range of $7,756 to $9,016.   (Id.)   This gross settlement value fell within the tortfeasor's BI limits,

which had already been tendered to Urena.   (Id.)   Accordingly, Pilato concluded that Urena's UIM claim did not warrant payment.   (Dkt. 65-7, 65-8)

On August 3, 2010, Urena, through her counsel, sent Allstate a letter enclosing the medical records and billing information from Dr. Frederigos for injections he made to Urena's spine during two separate office visits.   (Dkt. 65-5)   The supplemental medical bill totaled $4,010.   (Dkt. 65-6)   The letter indicated that Urena's medical bills then exceeded $11,888.   (Dkt. 65-5)   Allstate's claims diary indicates that this information was hand-delivered to the adjuster, Pilato, on August 6, 2010.   (Dkt. 65-1 at P. 15; Dkt. 79 at P. 30-31)   Despite the supplemental medical records and bill being available to her, Pilato failed to include the $4,010 amount on the Casualty Worksheet or in the Colossus assessment that she completed on August 9, 2010.   (Dkt. 79 at P. 35-36, 54)   Pilato testified that this bill should have been included and that the recommendations generated by the Colossus program were skewed because she had failed to input the additional medical bill into the system.   (Id. at P. 36, 55-56)

The initial demand submitted by Urena also included a medical opinion that she had suffered a 2% whole person impairment rating and that Urena would require ongoing treatment.   (Dkt. 65-2 at P. 5)   Based on her experience, Pilato did not believe that Urena could prove that she had suffered a permanent impairment that would entitle her to recover general damages for pain and suffering.   (Dkt. 65-3 at P. 12-15; Dkt. 65-8; Dkt. 79 at P. 47)   Therefore, Pilato entered a 0% permanent impairment rating into Colossus.   (Dkt. 65-8 at P. 2; Dkt. 79 at P. 53-53)   Pilato also testified that the entries she made into Colossus regarding the number of visits Urena made to Dr. Ferderigos and the fact that her treatment with him was not ongoing were both inaccurate in light of the

supplemental medical records.   (Dkt. 79 at P. 50-51)   Pilato never sought medical authorizations from Urena that would have allowed Allstate to obtain records directly from Urena's medical providers.   (Id. at P. 24)   Pilato also never spoke to Urena regarding her claim and did not seek any additional medical information from her through her attorneys during the evaluation of the claim.   (Id. at P. 41, 58)

Following Pilato's evaluation, Allstate Evaluation Consultant ("EC") Christy Pitcher ("Pitcher") reviewed the claim file, the Casualty Worksheet, and the Colossus assessment on August 17, 2010.   (Dkt. 81 at P. 2; Dkt. 65-1 at P. 16)   One of the purposes of the EC's review is to check the adjuster's analysis for completeness and to offer an independent evaluation of the claim.   (Dkt. S-96 at P. 11, 47)[1]   Based on her review of the information in the file at that time, Pitcher agreed with Pilato's evaluation that Urena's UIM claim had a value within the tortfeasor's BI limits.   (Dkt. 81 at P. 2)   Pitcher could not recall whether the additional medical records and bill from Dr. Federigos were contained in the claim file when she made her review, but, based on the information contained in the supplemental records, Pitcher testified that some of the information contained in the Colossus assessment was inaccurate.   (Dkt. S-96 at P. 31-32, 45-46, 62, 66-69, 76-77)

Allstate responded to Urena's demand for the full UIM Policy limits on August 18, 2010.   (Id.)   Allstate explained:

> Please be advised that we are in receipt of your demand package for Ms. Urena.   We have reviewed the information provided.   Ms. Urena was not injured at the scene nor did she go to the emergency room.   She has degenerative findings in her cervical, lumbar, thoracic and hand.   The billing was excessive.   It is our position that the value of [Urena]'s claim is within the underlying bodily injury limits.   Therefore, we will not be making any offers at this time.

---

1 Pitcher's deposition is filed with the Court under seal.   (See Dkt. 94)

(Dkt. 65-10)

On August 23, 2010, Urena, through her counsel, filed a Civil Remedy Notice ("CRN") with the Florida Department of Financial Services, citing "Unsatisfactory Settlement Offer" and "Unfair Trade Practice" as the reasons for the notice.   (Dkt. 81 at P. 3)  In total, the CRN alleged violations of eleven statutory provisions.  (Id.)  Pilato reviewed the CRN at or near the time that it was sent to her.  (Id.)  Pilato did not request any additional medical information from Urena in order to reevaluate her claim following receipt of the CRN.  (Dkt. 79 at P. 68)  Allstate responded to the CRN on October 19, 2010, denying that Allstate was in violation of any of the statutory provisions cited.  (Dkt. 65-16)  Allstate also stated that it had reviewed the information previously submitted by Urena and that:

> Ms. Urena was not injured at the scene, nor did she seek emergency room treatment.  She has degenerative findings in her cervical spine, lumbar spine, thoracic spine and her hand.  Based on what has been provided, it is our position that the value of her claim is within the underlying bodily injury limits.
>
> At this time, we have a difference of opinion as to the value of Ms. Urena's claim.  If additional information becomes available, we will continue to evaluate her claim.  If [we] may be of further assistance, please contact [us].

(Id.)

On or about January 24, 2011, Urena filed a breach of contract action against Allstate in state court.   (Id.)   At that time, Urena's claim was reassigned to Fredi Piazza ("Piazza"), a litigation UIM adjuster with Allstate.  (Id.)  Upon receipt, Piazza reviewed the entire claim file to familiarize herself with the case.  (Dkt. 77 at P. 16, 33)  At no time did Piazza reevaluate Urena's claim or check the accuracy or completeness of Pilato's

previous evaluation of the claim.   (Id. at P. 31-32, 48, 52)   Allstate did not have a policy requiring a litigation adjuster to do so.   (Id. at P. 30-31)   Piazza assigned a case segment to Urena's claim of "sx."   (Id. at P. 27)   The case segment informed defense counsel of how to proceed in the litigation of the claim.   (Id. at P. 26)   The case segment of "sx" directs defense counsel to settle the claim within the "evaluated amount."   (Id. at P. 27)   The "evaluated amount" is the value that is placed on the claim.   (Id. at P. 29) Based on Pilato's previous evaluation that Urena's claim was within the tortfeasor's BI limits, Piazza placed notes in the file to settle the claim for $100 or less.   (Id. at P. 33-34, 40)   Allstate filed an Answer and Affirmative defenses to the suit.   (Dkt. 81 at P. 3)   In October of 2011, Piazza left Allstate, at which time Urena's claim was briefly reassigned to Pilato.   (Dkt. 79. at P. 75-76)   Pilato never performed a reevaluation of Urena's claim during the time that the file was reassigned to her.   (Id. at P. 77)

On October 26, 2011, Dr. Kevin Scott performed a facet joint rhizotomies procedure as well as facet joint injections on Urena.   (Dkt. 81 at P. 3)   Urena provided the billing information for this procedure to Allstate on January 20, 2012 in response to discovery requests in the state court action.   (Id.)

In December 2011, Urena's claim file was reassigned to litigation UIM adjuster Matthew Vecellio ("Vecellio").   (Dkt. 65-23 at P. 38; Dkt. 79 at P. 76)   Allstate served Urena with a proposal for settlement in the total amount of $30,000, the full UIM Policy limits, on January 16, 2012.   (Dkt. 81 at P. 3)   Urena did not accept the proposal for settlement.   (Id.)   Her attorney testified that the offer was untimely.   (Dkt. 65-11 at P. 29)   That is, she claims the offer was made after the deadline for serving offers of

settlement in state court.   (Id.)   Additionally, it was well after the deadline set forth in Urena's initial Policy limits demand letter.   (See Dkt. 65-2)

After the fact and for reasons that are unclear, on February 8, 2012, Vecellio reevaluated the amount of Urena's UIM claim.   (Id.)   According to the new Casualty Worksheet completed by Vecellio, Urena's reasonable and customary medical expenses had increased to $46,990.46 at that time.   (Id. at P. 4; Dkt. 65-24 at P. 2)   Taking into account the $10,000 in available PIP benefits, Vecellio calculated that Urena's out-of-pocket medical costs totaled $36,990.46.   (Dkt. 65-24 at P. 2)   Vecellio also performed a second Colossus assessment.   (Id.)   The assessment valued Urena's general damages at $12,900 and recommended a gross settlement amount of $53,729.   (Id.) That amount was reduced by the available BI limits of the tortfeasor's policy, resulting in a final settlement amount of $43,729.   (Dkt. 65-25 at P. 4)   Because this amount exceeded the Policy limit of $30,000, Vecellio's notes in the claims diary recommended tendering the full Policy limits to Urena before trial.   (Dkt. 65-1 at P. 17)

The underlying breach of contract action proceeded to trial on February 27, 2012. (Id.; Dkt. 65-23 at P. 8)   The jury rendered a verdict for Urena in the amount of $162,665.84, for which a judgment was entered in the contract amount of $30,000.   (Dkt. 81 at P. 4; Dkt. 64-5)   Urena then filed the instant action on April 10, 2013, seeking compensatory and punitive damages against Allstate.   (Dkt. 1)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.   Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs.,

Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)).   Which facts are material depends on the substantive law applicable to the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party.   Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).   A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case.   Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.   Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted).   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.   Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").   "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it."   Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

### a.   Allstate's Motion for Summary Judgment

Allstate contends that it is entitled to an entry of summary judgment in its favor for three reasons.   First, Allstate argues that Urena failed to satisfy all conditions precedent

to bringing her suit.   Second, Allstate argues that no reasonable jury could find that Allstate committed bad faith in the handling of Urena's claim.   Third, Allstate argues that Urena's claim for punitive damages is barred by Florida law, or alternatively, that there is no record evidence to support such a claim.

### i.        Conditions Precedent

Allstate first argues that it is entitled to an entry of summary judgment in its favor because Urena failed to satisfy all conditions precedent to bringing her suit.   Specifically, Allstate contends that Urena's CRN is legally insufficient.   However, Allstate raises essentially the same arguments regarding the sufficiency of Urena's CRN that the Court already considered and rejected in denying Allstate's Motion to Dismiss.   (See Dkt. 6, 19)   Allstate does not offer any reason for the Court to reconsider its earlier ruling that Urena's CRN is legally sufficient.   Accordingly, Allstate's Motion for Summary Judgment is **DENIED**, in that regard.

### ii.        Allstate's Handling of Urena's UIM Claim

Urena brings her claim against Allstate under the Florida Civil Remedy Statute, § 624.155(1).   Under the statute, "[a]ny person may bring a civil action against an insurer when such person is damaged" by either violations of certain enumerated sections of Florida's Insurance Code, including the unfair claim settlement practices set forth in § 626.9541(1)(i), or by the commission of certain other specified conduct, including "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."   See Fla. Stat. § 624.155(1)(a) & (1)(b).   Accordingly, the statute provides two separate causes of action that may be asserted against an insurer, one for bad faith failure to settle and one for unfair claim settlement practices. See Auto-

Owners Ins. Co. v. Conquest, 658 So. 2d 928, 929 (Fla. 1995); Kearney v. Auto-Owners Ins. Co., No. 8:06-cv-00595-T-24TGW, 2010 WL 1507067, at * 3-4 (M.D. Fla. Apr. 14, 2010), aff'd, 422 F. App'x 812 (11th Cir. 2011) (acknowledging that allegations of unfair settlement practices can exist either independent of bad faith failure to settle claim or as part of bad faith failure to settle claim).

Although Urena's Complaint includes an allegation that sounds much like a bad faith failure to settle claim under § 624.155(1)(b)(1) (Dkt. 1 at ¶ 15), Urena's claim is based on Allstate's alleged violation of several of the unfair claim settlement practices set forth in § 626.9541(1)(i), and incorporated by reference under § 624.155(1)(a)1.[2]  In the Complaint, Urena alleges that Allstate violated:

> Fla. Stat. § 626.9541(1)(i)(3)(a): Failing to adopt and implement standards for the proper investigation of claims;
>
> Fla. Stat. § 626.9541(1)(i)(3)(d): Denying claims without conducting reasonable investigations based upon available information;
>
> Fla. Stat. § 626.9541(1)(i)(3)(f): Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement; and
>
> Fla. Stat. § 626.9541(1)(i)(3)(g): Failing to promptly notify the insured of any additional information necessary for the processing of a claim.

(Dkt. 1 at ¶ 22)  The Supreme Court of Florida has held that, in pursuing a civil action under § 624.155(1)(a)1, a plaintiff need only prove that the insurer committed one or more of the enumerated violations of the Insurance Code in regard to her own case.  She is not required to prove that the violations were part of the insurer's general business practice.  Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co., 945 So. 2d 1216,

---

[2] The Parties' Joint Pretrial Statement also states that Urena's claim is based solely on Allstate's alleged violation of several provisions of § 626.9541(1)(i).   (Dkt. 103 at P. 1)

1231-1233 (Fla. 2006); see also Ticor Title Ins. Co. v. Univ. Creek, Inc., 767 F. Supp. 1127, 1138 (M.D. Fla. 1991).

Whether an insurer has acted in bad faith is determined by a totality of the circumstances analysis. Berges v. Infinity Ins. Co., 896 So. 2d 665, 670 (Fla. 2004). This same analysis applies in cases alleging unfair claim settlement practices. Shannon R. Ginn Const. Co. v. Reliance Ins. Co., 51 F. Supp. 2d 1347, 1353 (S.D. Fla. 1999) ("To determine an insurer's liability for unfair claim settlement practices, Florida courts consider the totality of the circumstances"). The issue of whether an insurer's conduct rises to the level of bad faith is ordinarily a question reserved for a jury. Berges, 896 So. 2d at 681; see also Batchelor v. Geico Cas. Co., No. 6:11-CV-1071-ORL-37G, 2014 WL 7224619, at *9 (M.D. Fla. Dec. 17, 2014) ("Resolution of a statutory bad faith claim is 'rarely possible as a matter of law.'"). Therefore, only on rare occasions will "the facts of the case allow a court to rule on a bad faith claim as a matter of law at summary judgment." Kearney v. Auto-Owners Ins. Co., 664 F. Supp. 2d 1234, 1243 (M.D. Fla. 2009); Batchelor, 2014 WL 7224619, at *9.

Allstate contends under this standard that no reasonable jury could find that Allstate committed bad faith by engaging in unfair settlement practices concerning Urena's UIM claim. Principally, Allstate contends that even though Pilato admitted that she made a mistake in failing to include the supplemental bill from Dr. Frederigos in her evaluation of Urena's claim (Dkt. 79 at P. 63), such a mistake or act of mere negligence is insufficient to constitute bad faith under Florida law. See Berges, 896 So. 2d at 694 ("a plaintiff cannot demonstrate bad faith . . . by proving mere negligence or mistake"); see also Losat v. GEICO Cas. Co., No. 8:10-CV-1564-T-17, 2011 WL 5834689, at * 8

(M.D. Fla. Nov. 21, 2011) ("an insurer who is only negligent in its handling of an insured's claim, without more facts, does not rise to the bad faith standard and as a result cannot be held liable").

Urena argues that this heightened "bad faith standard" does not apply to claims under § 624.155(1)(a) because the violations that she alleges under § 626.9541(1)(i)(3) reference a reasonableness standard.  She points out that the Florida Civil Remedy Statute provides two separate subsections under which an insurer may be held liable for in its dealings with its insured.  Courts recognize that the so-called "bad faith statute"[3] provides for separate causes of action, one under subsection (1)(a) and another under subsection (1)(b), which must be pled and proven separately.  See Kearney v. Auto-Owners Ins. Co., No. 8:06-cv-00595-T-24TGW, 2010 WL 1507067, at * 3-4 (M.D. Fla. Apr. 14, 2010), aff'd, 422 F. App'x 812 (11th Cir. 2011); Conquest, 658 So. 2d at 929; see also United Guar. Residential Ins. Co. of Iowa v. Alliance Mortg. Co., 644 F.Supp. 339, 341 (M.D. Fla. 1986) ("because subsection (1)(b) is set apart from subsection (1)(a) with the disjunctive term 'or'[, a] claim of first party bad faith under (1)(b) may logically be seen as an alternative to any 'unfair claims settlement' remedy provided for under (1)(a).").  Urena has not, however, presented the Court with any case law directing that the same standard of proof should not apply to a § 624.155(1)(a) claim as the standard that applies to a § 624.155(1)(b) claim.  Nor has Allstate presented the Court with any case law conclusively showing that the heightened "bad faith standard" applies to a § 624.155(1)(a) claim.  No case that the Court has found addresses definitively the standard of proof that

---

3 Although § 624.155 is routinely referred to as the "bad faith statute," it is actually titled as a "Civil remedy" statute.  See Fla. Stat. § 624.155.

applies in a subsection (1)(a) claim, though, as Urena notes, the referenced and incorporated violations under subsection (1)(a) speak of a reasonableness standard.[4] Even so, application of a negligence standard for a claim brought under subsection (1)(a), with all of its attendant consequences, would seem to render superfluous the great body of law concerning claims brought to redress insurers' actions in failing to deal fairly and in good faith with their insureds.   Moreover, it begs the question why any person would ever pursue a claim under the heightened requirements of subsection (1)(b), the embodiment of which is often one or several violations under subsection (1)(a),[5] when the same claim could be pursued as a subsection (1)(a) claim by proof of negligence or unreasonableness.

Consequently, the Court requires oral argument of the parties in order to resolve this dispute and properly instruct the jury.   A final pretrial conference will be scheduled under separate notice for that purpose.   However, for summary judgment purposes, the Court finds that even under the heightened standard admittedly applicable in a classic § 624.155(1)(b) bad faith case, the matter should proceed to trial.   Urena has proffered sufficient record evidence from which a jury could find that Allstate committed more than mere negligence or mistake in the handling of Urena's claim.

---

4 See e.g., Fla. Stat. § 626.9541(1)(i)(3)(d) ("Denying claims without conducting **reasonable** investigations based upon available information") (emphasis added); Fla. Stat. § 626.9541(1)(i)(3)(f) ("Failing to promptly provide a **reasonable** explanation in writing to the insured") (emphasis added).

5 See Perera v. U.S. Fidelity and Guar. Co., 35 So.3d 893, 899 n. 9 (Fla. 2010) ("Section 624.155(1)(a) . . . sets forth additional grounds for bad faith, including unfair claim practices."); see also Nowak v. Lexington Ins. Co., 464 F.Supp.2d 1248, 1252 (S.D. Fla. 2006) ("[T]he evidence of violations of § 626.954[1](1)(i), including Defendant's failure to adopt and implement standards, may be a way to show that Defendant did not, in good faith, attempt to settle the lawsuit, in violation of § 624.155(1)(b) . . . .").

By her own admission, Pilato failed to consider Urena's supplemental medical records and the bill from Dr. Frederigos available to her at the time that she conducted her initial evaluation.   Urena's expert, Susan Kaufman ("Kaufman") concludes that this failure led to an inaccurate evaluation of Urena's claim.   Even if Pilato's initial omission was a "mere" mistake, which is debatable, a reasonable jury could find that Allstate compounded this error by failing conduct any further review of the file and by continually denying Urena's claim.   Pilato, along with several others, reviewed the claim file on several different occasions following the August 9, 2010 evaluation, yet at no point prior to February 2012 did Allstate ever reevaluate Urena's claim.   This occurred despite Allstate's assurances that it would reevaluate the claim and reconsider its denial upon the availability of any additional information.

Urena's initial demand indicated that supplemental medical records and an additional bill would be forthcoming and a placeholder was included for the bill by Pilato on the Casualty Worksheet that she initially completed.   (Dkt. 65-7 at P. 1)   Additionally, the claims diary within Allstate's system noted that the additional medical records had been received from Urena's attorneys and were hand-carried to Pilato on August 6, 2010. Even if the supplemental medical records and the bill from Dr. Frederigos were mistakenly omitted from the physical claim file, a reasonable jury could find that under the totality of the circumstances it was abjectly unreasonable—bad faith—for Pilato and those who reviewed the claim file to fail to investigate further and to find and include the supplemental medical bill in the evaluation of the claim.   Moreover, in these circumstances, the jury would be free to disbelieve entirely Allstate's assertion that it did

not know the material was in the file and that it did not know the claim was therefore subject to further analysis or payment outright.

These same facts could also support a finding that Allstate's written explanations of its denial of Urena's claim were unreasonable due to the inaccurate evaluation and omitted medical records.  Furthermore, a jury could also find that Allstate acted in bad faith in failing to implement reasonable standards for the proper investigation of claims based on the testimony of Piazza that she was not required to review a prior claim evaluations for accuracy or completeness and that Allstate failed to promptly notify Urena of additional information necessary for the processing of her claim because Allstate never sought additional information from her until discovery in the state court action.

Allstate also seemingly argues that it cannot be held liable because Urena was not damaged by Pilato's omission of Dr. Frederigos' medical bill.  More specifically, Allstate argues that Pilato's omission did not make a difference because Pilato testified that had she included it, she still would have evaluated Urena's claim to fall within the value of the tortfeasor's BI limits based on her own experience.  (Dkt. 79 at P. 63-64)  However, Pilato's after-the-fact justification for the denial of Urena's claim does not establish as a matter of law that Allstate did not engage in bad faith in its handling of Urena's claim or that Urena was not damaged by the omission.  A jury would be entitled to disbelieve Pilato's testimony that she would have evaluated Urena's claim in the same manner had she considered the additional information available to her.

Pilato testified that she recommended denying Urena's claim based on the fact that the gross settlement range recommended by Colossus of $7,756 to $9,016 fell within the tortfeasor's $10,000 BI limits.  However, simply adding the omitted bill of $4,010 to

the lower end of these admittedly inaccurate figures would place the value of Urena's claim above the available BI limits.   Kaufman, Urena's expert, also testified that based upon the same set of records available to Pilato on August 9, 2010, she would have evaluated Urena's claim to be between $11,726 and $18,726, even accounting for the $10,000 in PIP benefits and the tortfeasor's $10,000 BI limits.   (Dkt. 92 at P. 62-63, 84) Kaufman reached this valuation by accepting the $12,500 of reasonable and customary medical expenses calculated by Pilato, adding the $4,010 that was excluded, subtracting $10,000 in PIP benefits and $10,000 for the tortfeasor's BI limits, adding $216 for lost wages, and then adding between $15,000 and $22,000 for general damages.   (Id.) Accordingly, a disputed issue of material fact exists as to whether Allstate would have still denied Urena's claim even if the omitted medical bill had been included in the initial evaluation.

Based on the foregoing, Urena has submitted evidence upon which a reasonable jury could find that Allstate engaged in more than mere negligence in the handling of Urena's UIM claim by committing violations of § 626.9541(1)(i)(3)(a), (d), (f), and (g). Although Allstate has presented evidence to support its argument that under the totality of the circumstances it handled Urena's claim in good faith, such a determination remains to be decided by a jury.   Berges, 896 So. 2d at 680 ("where material issues of fact which would support a jury finding of bad faith remain in dispute, summary judgment is improper").   Accordingly, this is not one of those "rare cases" in which summary judgment is appropriate and Allstate's Motion for Summary Judgment is **DENIED**, as to its handling of Urena's UIM claim.

17

### iii.       *Punitive Damages*

Alternatively, Allstate argues that it is entitled to an entry of partial summary judgment in its favor with respect to Urena's claim for punitive damages.   Allstate contends that an award of punitive damages against an uninsured motorist carrier in an action under § 624.155 is expressly prohibited by Florida law.   Urena disagrees.   This issue involves the interaction of three statutory provisions: Fla. Stat. §§ 624.155(5), 627.737(4), and 627.727(10).

The Florida Civil Remedy Statute, § 624.155, allows any person to bring a civil action against an insurer when that person has been damaged by certain enumerated acts of the insurer.   "Insurer" is defined broadly to include: "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity."   Fla. Stat. § 624.03.   Section 624.155 also provides that:

> No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
>
> (a) Willful, wanton, and malicious;
>
> (b) In reckless disregard for the rights of any insured; or
>
> (c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Fla. Stat. § 624.155(5).

Notwithstanding this language, Allstate contends that an award of punitive damages in this suit is barred by §§ 627.737(4) and 627.727(10).   Section 627.737(4), enacted prior to the Civil Remedy Statute, states: "In any action brought against an **automobile liability insurer** for damages in excess of its policy limits, **no claim for**

18

**punitive damages shall be allowed**." Fla. Stat. § 627.737(4) (emphasis added).

Additionally, § 627.727(10), enacted after the Civil Remedy Statute, states:

> The damages recoverable from an **uninsured motorist carrier** in an action brought under s. 624.155 **shall include** the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

Fla. Stat. § 627.727(10) (emphasis added).

Several courts that have addressed this issue have held that § 627.737(4) bars a claim for punitive damages in an action brought pursuant to § 624.155 against an uninsured motorist carrier, notwithstanding the language contained in § 624.155(5). Lender v. GEICO Gen. Ins. Co., No. 09-22303-CIV, 2011 WL 9362402 (S.D. Fla. Sept. 16, 2011) (granting insurer's motion for partial summary judgment on punitive damages claim); Trout v. GEICO Gen. Ins. Co., No. 6:13-cv-1994-Orl-37DAB, Dkt. 24 (M.D. Fla. Mar. 19, 2014) (hereinafter Trout) (granting insurer's motion to dismiss or strike plaintiff's claim for punitive damages); Cadle v. GEICO Gen. Ins. Co., No. 6:13-cv-1591-Orl-31GJK, Dkt. 21 (M.D. Fla. Dec. 18, 2013) (granting insurer's motion to dismiss plaintiff's claim for punitive damages); Dellavecchia v. GEICO Gen. Ins. Co., No.: 8:09-cv-2175-T-27TGW, Dkt. 102 (M.D. Fla. Dec. 15, 2010) (hereinafter Dellavecchia) (denying plaintiff's motion to amend complaint to add claim for punitive damages on the grounds that amendment would be futile).

For example, in Dellavecchia, the district court held that the more-specific prohibition of punitive damages contained in § 627.737(4), although older, should control over the less-specific provision contained in § 624.155(5), which provides for the possibility of recovering punitive damages in any action under § 624.155. Dellavecchia,

19

Dkt. 24 at P. 5-6 (noting that § 627.737(4) applies only to automobile liability insurers, while § 624.155 applies to any type of insurer).   Furthermore, the court stated that its holding is further supported by the most recently enacted statute, § 627.727(10), which does not make any mention of punitive damages in listing the available damages in a § 624.155 action against an uninsured motorist carrier.   Id. at P. 6.

Urena argues that this issue is controlled by the Supreme Court of Florida's opinion in State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 61 (Fla. 1995).   In that case, the Supreme Court of Florida addressed a certified question from the Eleventh Circuit Court of Appeals regarding whether § 627.727(10) is remedial and should have retroactive application.   Id. at 56.   That case, like this one, involved a first-party claim under § 624.155 against an uninsured motorist carrier.   Id.   In addressing the question, the court noted that § 627.727(10) was enacted to clarify that an insured's damages against an uninsured motorist carrier in an action under § 624.155 shall include the imposition of the excess judgment without regard to proximate causation.   Id. at 60-61. Despite the Legislature's deeming the statute to be remedial, the Supreme Court of Florida held that the statute is penal in nature and thus, would not be applied retroactively. Id. at 61.   In its decision, the court stated:

> By implementing section 627.727(10), the Legislature is in essence subjecting insurance companies in first-party bad faith actions to two penalties because, not only are they subject to punitive damages for the willful or reckless refusal to pay a claim, they are also subject to a penalty for the wrongful failure to pay a claim. This means that an insurance company found to have acted in bad faith in a first-party action **may now be liable for**: (1) damages proximately caused by the bad faith including interest, attorney's fees, and costs; (2) a penalty consisting of the entire amount of the excess judgment without regard to proximate causation; and (3) **the additional penalty of punitive damages when the bad faith is found to be willful or reckless**. To say that, under these circumstances, section 627.727(10) is simply a remedial clarification that

does not retroactively impose a new penalty is not a justifiable interpretation.

Id. (emphasis added).   Urena contends that the court's comment regarding the possibility of recovering additional punitive damages for willful or reckless conduct establishes as a matter of law that punitive damages under § 624.155(5) are available in first-party actions against uninsured motorist carriers.

However, the precise issue before the Supreme Court of Florida was the retroactivity of § 627.727(10), not the availability of punitive damages under § 624.155(5). Despite Urena's argument to the contrary, the Supreme Court of Florida's holding in Laforet that § 627.727(10) does not apply retroactively was based on its view that an award of the full amount of the excess judgment against an uninsured motorist carrier without regard to proximate causation is a penalty.   Id.   Therefore, the court's comment that additional punitive damages *may* be available under § 624.155(5) is merely *dictum* and is not controlling on the issue before this Court.   See Denno v. School Bd. of Volusia County, Fla., 218 F.3d 1267, 1283 (11th Cir. 2000) ("*Dictum* may be defined as a statement not necessary to the decision and having no binding effect.").

Additionally, other district courts that have dealt with this issue have rejected the same argument raised by Urena following the same reasoning.   See e.g. Lender, 2011 WL 9362402, at *1 (stating that although Laforet "noted that punitive damages may be available as an additional penalty in a first party bad faith action for uninsured motorist benefits, such a statement appears to be an observation only, and was not a necessary component of the court's resolution of the case; moreover, the court did not address the clear prohibition, found in Fla. Stat. § 627.737(4), as to the recovery of punitive damages against an automobile liability insurer."); Dellavecchia, Dkt. 102 at P. 5, n. 4 (same effect);

21

Trout, Dkt. 24 at P. 3 ("The *Laforet* court was not called upon to interpret or harmonize the three statutory provisions and, indeed, did not address Section 627.737 at all, let alone purport to abrogate it.").

Accordingly, the Court finds that Urena's claim for punitive damages is barred by Florida law.   Therefore, Allstate's request for an entry of partial summary judgment as to the claim for punitive damages is **GRANTED**.   Because the Court has determined that Urena's claim for punitive damages is barred, the Court need not consider Allstate's alternative argument that there is no record evidence to support such a claim.

### b.   Urena's Motion for Partial Summary Judgment on Allstate's Affirmative Defenses

In her Motion for Partial Summary Judgment, Urena challenges many of the affirmative defenses raised by Allstate in its Answer.

### i.   *Allstate's First, Third, and Fourth Affirmative Defenses*

Urena contends that she is entitled to an entry of partial summary judgment on Allstate's First, Third, and Fourth Affirmative Defenses, which all challenge the legal sufficiency of Urena's CRN.   As noted above, the Court has previously rejected Allstate's arguments regarding the legal sufficiency of Urena's CRN.   Accordingly, Urena's Motion for Partial Summary Judgment is **GRANTED**, to that extent.

### ii.   *Allstate's Second and Ninth Affirmative Defenses*

Urena contends that she is entitled to an entry of partial summary judgment on Allstate's Second and Ninth Affirmative Defenses, which claim that Urena's Complaint fails to state a cause of action upon which relief may be granted.   The Court finds that these defenses simply seek to negate plaintiff's *prima facie* case and as such, are not properly asserted as affirmative defenses.   See In re Rawson Food Serv., Inc., 846 F.2d

1343, 1348-49 (11th Cir. 1988) (treating affirmative defense based on failure to state a claim as a specific denial rather than affirmative defense); United Fixtures Co. v. Base Mfg., No. 6:08CV506ORL28GJK, 2008 WL 4550212, at *4 (M.D. Fla. Oct. 8, 2008); Boldstar Technical, LLC v. Home Depot, Inc., 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007).   Therefore, the Court will treat them as specific denials and Urena's Motion for Partial Summary Judgment is due to be **DENIED**, as to these defenses.   See Batchelor v. Geico Cas. Co., No. 6:11-CV-1071-ORL-37G, 2014 WL 7224619, at *9 (M.D. Fla. Dec. 17, 2014) (denying motion for partial summary judgment as to purported affirmative defenses treated as denials); Biscayne Cove Condo. Ass'n., Inc. v. QBE Ins. Corp., 951 F. Supp. 2d 1292, 1305 (S.D. Fla. 2013) (same effect).

### iii.   *Allstate's Fifth, Sixth, Seventh, Eighth and Tenth Affirmative Defenses*

Next, Urena contends that she is entitled to an entry of partial summary judgment on Allstate's Fifth, Sixth, Seventh, Eighth and Tenth Affirmative Defenses because those defenses are not true affirmative defenses and should be treated as denials.   The Court agrees that these defenses should also be treated as specific denials but, as noted above, the treatment of asserted affirmative defenses as denials does not warrant the entry of summary judgment in a plaintiff's favor.   Accordingly, Urena's Motion for Partial Summary Judgment is also due to be **DENIED**, as to these "defenses."

### iv.   *Allstate's Twelfth through Seventeenth Affirmative Defenses*

Lastly, Urena argues that Allstate's Twelfth through Seventeenth Affirmative Defenses are related to Policy defenses that it did not raise in the underlying state court action.   Accordingly, Urena argues that Allstate should not be able to raise them now in this suit.   However, the actions of Urena as well as the provisions of the underlying Policy

are relevant to the case at hand and may be considered by the jury under the "totality of the circumstances" analysis applicable to this claim.   See Shannon, 51 F. Supp. 2d at 1353.   Therefore, to the extent that Allstate seeks to present the information contained in these contentions as part of its overall theory that it did not act unfairly in the handling of Urena's claim, they amount to denials and not defenses to coverage.   To that extent, Urena's Motion for Partial Summary Judgment is **DENIED**.   See Flood v. Geico Gen. Ins. Co., No. 8:11-CV-49-T-24 TBM, 2012 WL 439036, at *2 (M.D. Fla. Feb. 10, 2012) (denying summary judgment where affirmative defenses at issue were simply part of insurer's theory as to why it should not be found liable on bad faith claim).

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Allstate's Motion for Summary Judgment (Dkt. 65) is **GRANTED in part** and **DENIED in part**.   The Motion is **GRANTED** only as to the claim for punitive damages.

   a. Because the claim for punitive damages is no longer at issue in this case, Allstate's Unopposed Motion to Bifurcate Trial of the Amount of Punitive Damages (Dkt. 108) is **DENIED as moot**.

2. Urena's Motion for Partial Summary Judgment (Dkt. 64) is **GRANTED in part** and **DENIED in part**.   The Motion is **GRANTED** only as to Allstate's First, Third, and Fourth Affirmative Defenses.

**DONE** and **ORDERED** in Tampa, Florida, this 9th day of April, 2015.

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE